The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. I want to welcome everyone to the 4th Circuit Court of Appeals this morning. We have three interesting cases. And Judge Richardson and I in particular want to welcome our dear friend, Judge Osteen, from North Carolina, who's serving with us today on the 4th Circuit. Good to have you with us, Judge Osteen. Thank you, Judge. In the first case, United States v. Davis, No. 23-4174, Mr. Bryant. Yes. Mr. Bryant, you represent the appellant? Yes, Your Honor. Good to have you, sir. Thank you very much. Good morning, Your Honors. May it please the Court, Patrick Bryant on behalf of William Davis this morning. Congress, the Supreme Court, and this Court have each required district courts to explain their sentencing decisions in detail. Part of that responsibility is to address on the record the defendant's mitigating arguments and not just to mention them, but to explain the reasons for rejecting them. That didn't happen here, and for that reason, this Court should vacate Mr. Davis' sentence. I'd like to draw the Court's attention to two particular errors that we've identified. One is more specific and one is more general. With regard to the specific issue, the failing on the part of the district court, is all of the mental health mitigation evidence that was presented by defense counsel at sentencing. The district judge at the sentencing hearing somewhat euphemistically referred to learning disabilities and made some bare mention of the defendant's very traumatic childhood, but it actually went much deeper than that. In addition to the extensive abuse and trauma he suffered, there's significant evidence in the record of severe neurocognitive defects, mental deficiencies. There's a diagnosis of PTSD and a significant amount of medication that the defendant, Mr. Davis, was on, and none of that was disputed by the government at all, and none of it was mentioned by the district court. All the district court did was, as if checking a box, saying, I acknowledge that you had some childhood trauma, but then what our argument was, the central thesis of the defense argument at sentencing, was that all of those experiences explained and gave some context for Mr. Davis' more youthful criminal record, his background, that seemed to be the factor that the district court relied on more extensively. He had a real bad criminal record, didn't he? Well, he did, but our evidence, we think, rebutted that and rebutted the significance of that and put it in perspective, and the court never addressed that argument whatsoever. It said, yes, he had this and went through the criminal record, but didn't explain or even acknowledge or explain why he rejected our argument that all of the severe childhood trauma... Well, we acknowledge that, but... Well, again, I think that's a little bit euphemistic on this record to say a tough childhood. It was a very severe... Spent time in the hospital. You keep using the word euphemism, right? It didn't sound like euphemisms to me. Well, and I understand the court perhaps had some reluctance to go into chapter and verse on the public record of every single instance of abuse or beating or the particular implements that were used. What's the reason he would have to? We say you have to acknowledge and address mitigating arguments, but we say repeatedly you don't have to address every piece of evidence that a defendant puts forward. You have to address the central pieces. Well, and I think that what didn't happen here is the connecting of the dots, and so mentioning that... I know, but you started off by saying it seemed to me your focus, maybe you want to have a different focus, but it seemed to me the focus of your argument was that he didn't address the specific mental health evidence we had and he only euphemistically referred to his mental health challenges. What I'm trying to understand is why that matters. I don't understand why, based on our case law, he's required to tick through every mental health diagnosis that you put forward or address every instance of mental health challenge that he faced. Nobody denied, and the record plainly reflects, that Mr. Daniels had real childhood adversity and challenges. Well, I acknowledge that, and I also acknowledge that no district judges are not required to, for example, just repeat every word in the defense memo. I'm not suggesting anything like that. Two quick responses. One is that the blue decision from this court is one that does say that, and reversed where a judge mentioned some of the arguments but not all, and the reason it mattered here is that all of this evidence about the early childhood trauma, including the argument that that affected brain development, maturity levels, even into young adulthood, that's when the criminal history dates to. And so the argument in sentencing that the district court should have addressed or rejected, I'm sorry. Well, the criminal history really goes past that because he's being prosecuted for a felony at age 34, right? Yes. So the violent crimes and the drug distribution occurred at an earlier age, lengthy prison sentences. I heard you mention the judge failed to connect the dots. So let's talk about connecting the dots and how you would connect them. Your position is that the adverse childhood experiences in the research has shown that there are mental health issues, substance abuse issues, and other issues associated with that kind of environment. Yes. And so to some degree, as you point out, that would explain some of his criminal conduct at an early age, right?  Yes. Which means, if I take that to the logical conclusion, that because of those adverse childhood experiences, he posed a greater risk of engaging in criminal activity, right? Isn't that fair? I think at a younger age that's maybe more likely. Okay. Let's take younger age. We'll start there. So at a younger age, he was more likely to engage in criminal activity as a result of these childhood experiences. But on the other hand, if ACEs create a higher risk of engaging in criminal conduct, number one, what's to show that stops at age 24, 25, 26, 30, 34? How do you get rid of that risk that has manifested itself in conduct between 19 and when was the second conviction, like age 25 or something? I think that's correct. Something close. So from 19 to 25, according to your argument, he's engaging in this conduct because of his childhood experiences. But the question then becomes, do those childhood experiences, if left untreated, put him at a higher risk of continuing to engage in criminal activity? There really wasn't any evidence of that presented, was there? Well, not along those lines. I think there are. Was there any evidence presented that he was currently undergoing treatment that might reverse the effect of the mental health illness and other things? I don't specifically recall whether that was happening. So in terms of connecting the dots then, there's no question about the tragic nature of those early childhood experiences. But on the other hand, the judge is evaluating all these facts under 3553A, and there is not a factor that says tragedy early in life. The factors are very clear. And one of those factors, which the judge mentioned, is protecting the public. One of those factors is specific deterrence. And so if I accept, as a district judge, if I accept your argument that those early childhood experiences contributed to his continuing to engage in criminal activity over some period of time, you can make an argument one of two ways. You can say it mitigates or you can say it aggravates because the defendant has a higher risk of continuing to engage in criminal activity. And so my point here is, is it fair to say the judge disregarded it or is it fair to say the judge considered it but weighed it against these other things that he specifically mentioned because of the uncertainties as to whether or not those ACEs truly mitigate or maybe under the 3553A factors they point to a heightened risk. Well, I wish the district court had told us. And I think the failing here is that if that was what was in the court's mind, I mean, by acknowledging the arguments and he's saying he heard you, as Judge Richardson said, he explained it in some detail about what had been presented. So we know, it seems to me, you know that he considered it. And the question is, what did he do with it and did he explain that enough? Well, I think that is our argument that the judge didn't because if that's what the court was thinking, then the court could have put it on the record. It could have made explicit what was implicit. Believe me when I tell you, we could always do it better. There's no question about that. But the question is, what did he do here? And here he was very explicit in what he considered about those conditions. And then he explained very explicitly the government moves for an upward variance based on specific and general deterrence, et cetera, et cetera. I'm going to grant the government's motion. And then he starts running down the litany of reasons that he grants the motion. And so it seems to me that I could, you may disagree with this, reasonably read this record to say under 3553A that he considered the argument but felt like the aggravating facts, the history with respect to the criminal history, the fact that the two prior convictions involving drug distribution were actually felony distribution offenses, even though they weren't categorically categorized that way. So tell me why I'm wrong if I look at it that way. Well, I can tell you're a district judge. Yeah, I'm sorry. That's why I'm taking all this back. I think that's actually a crack on us. What it says is the Fourth Circuit jurisprudence doesn't appear that we know what district judges do. No, I think, Your Honor, if the district judge here had made that sort of explanation and connected those dots and drawn that connection and said explicitly, I find that this is outweighed by these other factors. That's all. This is not a trap or a trick for busy district judges. It really only takes a couple of sentences. And I've seen plenty of judges say at the end of a sentencing, parties, are there any arguments I haven't addressed? And that would obviate all of this. You understand that we've said that doesn't matter, right? That you can say, no, I have nothing, right? And that you still get de novo review before this court, right? Saying that doesn't affect you. You have every incentive to sandbag that, right? Well, I believe, Your Honor, that the specific case is when a judge says, is there anything else? And the party says, no. If I could finish this point. You can answer the question as long as you get it. Thank you. But if a judge specifically says, are there any of your arguments that I haven't adequately addressed on the record, and then the party can say, yes, and give the judge a chance to address them, or say no, and that would waive the argument if it's an affirmative statement that, no, you've addressed everything. That's all that it really takes here. I've also seen the government say, Your Honor, would you mind putting on the record that these factors are outweighed by these other factors? And the judge says, yes. That happens all the time. This is not that difficult. That's a good way to do it. But the question is whether Judge Young did or not. That's the question here. I understand it. That's exactly the question. I thought you performed like a magician to get these guidelines down to 12 to 21 to 27 months. That's amazing on this guy's record. Well, you've got them down there. And that's the reason the judge granted the upper departure. I mean, they asked, the government asked for 10 years. And that's the maximum.  And when he mentioned the fact that he'd wrestled around to get that gun out of his britches when he was in the backseat, he would have killed those two police officers. I don't think the record supports that. Well, I read it, and I don't have much trouble figuring that out. I didn't come over on the pickle. Well, I don't think the district court made that. He did. He mentioned that. He mentioned it. He mentioned that was a big factor, that he had that gun and he lied to him. And it was loaded. Well, I don't think the court found any intention to use it. Well, he was wrestling around with it, and he moved it. According to the record, he moved it from his genitals to his waistband when he was handcuffed. And the police officers were sitting in the front seat and didn't know he had the gun. And what was he going to do with it once he got it out of the waistband? I think the best the record would support, he intended to discard it. The judge never made any finding that he intended to use it. Hold on a second. I mean, he's in the car at a traffic stop. He had plenty of time to stick it under the seat, throw it out the window, do whatever. How in the world is a judge supposed to conclude that he intended to discard it? Well, Mr. Davis has never had any violent offenses to that degree of an intentional murder type offense. I think that there were.  Well, not to that degree. So I just don't think there were, and certainly there were no findings by the court to that degree. So I understand. I mean, he did find, he repeatedly said, he said, I read paragraph eight. This is the paragraph where it says, I think pretty clearly that your client like looked like he was going to shoot the cops. Like he read it out loud. He then comes back to it and says, I also read paragraph eight, which really illuminate the facts and circumstances around the arrest. This is where he's saying this is a super serious offense. I think the plain way of reading that is that he reached paragraph eight like any reasonable reader would read it, which is that your client was in the process of trying to shoot a bunch of cops. I think our position is, Your Honor, that even if that were the case, the court here is still required to explain why it was rejecting the defense arguments. So what if I read it to say he didn't reject it, but felt like these other facts and factors required the 72-month sentence? He never said I rejected. And I think that's the particular failing. And I think if the court had said that this is outweighed by this other, then we wouldn't be here. And unless there's anything else at the moment, I'll reserve the rest of my time for rebuttal. Anything else? Thank you. Thank you. Let's see what Mr. Ossoff says about this. Good to have you with us. Thank you, Judge King. It's a pleasure to be here. Good morning. May it please the court, Peter Ossoff, on behalf of the United States. Mr. Davis' 72-month sentence is procedurally and substantively reasonable. Because the district court conducted an individualized assessment of Mr. Davis, adequately explained the sentence imposed, and did not abuse its discretion in fashioning the sentence, this court should affirm the district court's judgment. It is firmly established from Gall v. United States and its progeny that courts of appeals must review all sentences, whether inside, just outside, or significantly outside the guidelines range, under a deferential abuse of discretion standard. Gall further instructs that while a sentence within the guidelines range may be considered presumptively reasonable, upon review, a sentence outside of the guidelines range may not be considered presumptively unreasonable. Rather, the reviewing court may consider the extent of the deviation, but must give due deference to the district court's decision that the Section 3553A factors on a whole justify the extent of the variance. That was a big departure, though, from 27 months to 72. Well, Your Honor, this court has upheld statutory maximum sentences for 922G in the past. I'd refer the court to this court's decision in United States v. Messer, 795 Fed Appendix 165, where Mr. Messer was given 120 months. And I'll remind the court that Congress... That's what you asked for here. That is correct, Your Honor. You asked for that. How did they ever get that guideline range down to 27 months? That's what strikes me as... I agree with that analysis, Your Honor. And, unfortunately, I wasn't in charge of the case below. There's a decision from our court that required it, right? I believe so, and I believe that's still... We're not going to ask who's on the panel, but there was a decision from our court that required it, right? It wasn't some magic trick, right? It was a sight of a Fourth Circuit case that says it's got to be super low. That is correct, Your Honor. And the defense relied on U.S. v. Campbell, which my understanding is at odds with U.S. v. Ward and U.S. v. Groves, which is going to be coming before this court by way of a case United States v. Brown in the Eastern District, Virginia, 322CR134. I don't want to think you want to get into all that. Well, I don't, Judge, but I brought it up because you all did. If you want to, you're going to have to understand what the rules are. If you say that one case is at odds, that doesn't help you at all. I understand. I appreciate that, Judge, and I had no intention... You've got rules that control that. And I had no intention of delving into that area. I only mentioned it because Your Honor brought it up. How did the... Well, you got it down there in the 27 months that the judge did, and then you've got a probation officer with potential here, and then he's been here for 10 years, and he took it back up to 72 months. How much of a factor was his conduct with his firearm? I believe that was significant. As Judge Richardson said, that before the district court even began to impose sentence or to discuss its analysis of the 35-53-8 factors, it abruptly addressed the parties because at sentencing there was at odds with some of the factual discrepancies pertaining to the firearm and the fidgeting around it in the back seat. And the judge at JA-146 emphasized the district court's concern with the nature, circumstances, and seriousness of the offense. It demonstrated not only it's familiar with the PSR, which outlined Paragraph 8 at Joint Appendix 172, but also how closely the judge was listening to and considering the arguments of both parties at sentencing. And I'll note that the PSR at Paragraph 8 gave great details, as Judge Richardson pointed out, about the details and the extent to which Mr. Davis tried to conceal the firearm. Quote, placing a number of individuals in serious danger, end quote, said the district court at JA-152. And the district court's concern with the extent to which Mr. Davis attempted to conceal the firearm was warranted, given what we know of the statement of facts and the PSR from the record. Taken together, these facts, facts, Your Honor, that Mr. Davis expressly adopted and did not dispute, are deeply concerning and exponentially increase the seriousness of the prohibited possession offense. I'll pose a reverse hypothetical on you. So, during the sentencing, the AUSA argued at one point, it sounded like anyway, that there might be ways that Mr. Davis could have been subject to the 924E penalties. And also argued that because Congress had changed the statutory maximum, that was information that might reflect on the seriousness of the offense. The second argument, I think, is a fair argument in terms of the seriousness of the offense. The first argument, that he could have been subject to the 924E penalties, I think is really very misleading to a court to try to go down that road. I thought the counsel for the defendant very effectively rebutted that with the ex post facto argument. And that never came up during the district court's explanation of the sentence. So, to the extent, if I were to find that to say that he might be subject or is subject to the 924E penalties, is a, we'll call it an argument advanced by the government and never addressed by the district court. How do we know whether or not the district court rejected that argument by your AUSA? Or, can I put it in the category of a frivolous argument that didn't have to be addressed by the district court? I would agree with the latter, Your Honor. I don't think the district court is obligated to consider impossibilities of law. In this case, the question then becomes, why is the AUSA making that argument to begin with? It's cluttering up the record. I would agree with that. And as this court has said earlier during my friend's argument, we can always do better. We could tell a story there, right? So, like, Congress, which sets policy for the United States, has made the judgment that this is a more serious crime than it used to be, right? That judgment, right, is one that we ought to take into account, right? So, our elected officials have determined that being a felon in possession is more serious than we used to think it is. That policy judgment, probably not very important, probably should have been left out, but not, like, irrelevant in evaluating what an appropriate sentence would be in this case, admitting that you're still bound by the 10 years. We can come up with a story. I'm not saying the guy should have made the argument. I'm just saying, like, it's plausible. That's correct, Judge Richardson. And my mistake, I was addressing the armed criminal reference, not the latter. But that's the same thing, right? You made the same argument there with the armed criminal, right? Yes, because the Supreme Court and the Fourth Circuit have these, like, Byzantine rules about what counts as a certain type of offense or not that largely ignores reality, right? The court ought to be able to consider whether these look like substance abuse offenses or look like crimes of violence, even if they don't technically qualify in determining what the appropriate sentence is. That's fair, Your Honor. But I would distinguish the two. I do think there's a difference. I agree with Judge Osteen to the extent that referencing the armed criminal might have been a bridge too far, whereas referencing the stat max that Congress imposed directly goes to how critical, how dangerous this, in fact, is. And I might mention that it's only for 922G1, not the other subsections of 922G that Congress did this. So Judge Richardson and you have brought us to what I think is, at least for me, an important point. And I say this in case the defendant wishes to address it too. There's one sentence in the district court's discussion that caught my eye, and that is Mr. Davis committed this offense after sustaining at least two other convictions involving drug distribution. And like the change in the stat max, this case originally came before the court with a pre-sentence report that had a 57 to 71-month guideline range based on Campbell, the judge, sustained the objection and dropped it down to the 21 to 27 months. And I read that sentence to say, and maybe it could have been articulated better, but to say it wasn't an attempt offense. This was an actual drug distribution offense. And therefore, the seriousness of the conduct falls more closely to a 57 to 71-month range rather than a 21 to 27-month range. Am I reading too much into that sentence by the district court? I think that that could be considered a reasonable reading, Your Honor. And you mentioned that earlier when my friend was at the podium, that it is all about what this court can reasonably read from the record. We know from this court's decisions in Lewis, Ross, and Montez-Panetta that the courts may infer from the record. Essentially, this court said in Lewis, it is sometimes possible to discern a sentencing court's rationale when an explanation is lacking. Thus, the court will not vacate a sentence simply because the sentencing court did not spell out what the context of its explanation made patently obvious. And I think all of your honors have touched upon ways in which district court made patently obvious its reasoning here, that it considered all of the section 3553A factors. And at the end of the day, your honors, it's not a matter – district courts are not obligated to weigh the 3553A factors the same way as this court might. And it's certainly not obligated to weigh the 3553A factors the way that a defendant might wish that it had. And so for those reasons, your honor, we believe that the district court correctly assessed, conducted an individualized assessment of the defendant's record, tailored a specific sentence for Mr. Davis. And we know that because in addition to expressly addressing all the factors, it ordered mental health treatment. It ordered that he be assessed for his drug addiction and drug treatment. Let's talk about patently obvious for a minute in terms of what we can and can't glean from this record. If I take the other position on behalf of kind of the defendant's side of the argument, the adverse childhood experiences argument is one that's gained a lot of – well, traction may not be quite the right word, but recognition. And there are some district courts that have written opinions about ACEs and whether or not they're going up or down within the guidelines. And it is a complicated issue, I think. In terms of patently obvious, one of the defendant's core arguments is if you don't say anything about it other than just recognize the argument, you can't know how it factored into the decision, and that's not sufficient. What do you say in response to that? Well, I would again refer the court back to what it can infer from the record. Here, the judge made clear what it considered the PSR, the arguments of defendants, the precision papers submitted, where even in its brief, the appellant talks about how thoroughly his childhood was expressed in all those things that the court considered. And again, as Judge Richardson pointed out, on page 149 and 150 of the JA, the court directly addressed this and said, Mr. Davis' childhood was marked by instability, sickness, and abuse. His father abused alcohol and cracked cocaine. His stepfather physically abused him, and both his stepfather and mother also abused drugs. He spent time in the hospital as a child and dealt with learning disabilities. As referenced earlier, the court has received letters of support from two of his friends, which the court did reference earlier at JA 134. So then how did those facts work in light of the 3553A factors? Did he reject them? I think it's reasonably referred from the record, Your Honor, that he considered them and weighed them, but they did not. They were outweighed by the nature and circumstances of the offense, the history and characteristics of the defendant, his criminal history, and as the court said, taking everything as a whole and the totality of the situation. The court expressly said that what was particularly alarming to the defendant was his disciplinary record while incarcerated. And notably, this is not considered a part of his criminal history by the guidelines. This is his nature and characteristics. And the court goes on at JA 153 to weigh out the extensive criminal citations that the defendant received, Mr. Davis received while incarcerated. I think the court makes abundantly clear what it focused on, which again, it's under no obligation to weigh the 3553A factors the way that this court might or that defendant wished it would. And I would say, you know, if I could just conclude, Your Honors, Mr. Davis' 72-month sentence is procedurally and substantially reasonable given the totality of the circumstances as considered and explained by the district court in light of the Section 3553A factors. Blue and Ross, which the appellant relies upon, are easily distinguishable. And for these reasons, Your Honors, the United States respectfully requests this court affirm the judgment of the district court. Thank you. Thank you very much. Thank you, Your Honor. Mr. Breyer. Thank you. I'd just like to make two brief points in the time I have on rebuttal. First, let me say what I think is not patently obvious from this record. We don't know at all what weight the district court gave the mitigating arguments. Now, the questions that I think are unanswered is, did the court think that maybe I should give a 10-year sentence, but I want to come down based on this mitigating evidence? Did the court think the mitigating evidence supported a guideline sentence, but the aggravating sentence caused it to go up to six years? Or did the court think, well, the original guideline range was just about right, so I'm going to give a sentence about there, and this evidence has no weight one way or the other? We simply don't know. Why are those mutually exclusive? I understand what he's saying here to be I've considered all of these factors, and, yes, it might be impossible for me to tell you why I picked 72 months as opposed to 71 months. I don't have a great explanation for why 72, not 71, nor do I have a great explanation for why 72 and not 73. But I put all these things into the cauldron, and we take a reasonable district court judge, and we let them make that judgment so long as they show us what they're doing. But we don't require them to say I assign 37 pounds worth of weight to this evidence and 42 pounds worth of weight to that evidence and 16 pounds of weight to that evidence, and I put them on a scale in some sort of false sense of precision. Well, we're certainly not asking for that degree of detail on it. All we're asking for is when a judge says I've considered this, the sentence needs to continue with a dot, dot, dot. And so, therefore, I reject that because of something, and we just don't have that here. And the last point that I'm making, the minute I have remaining, is I urge this court to consider this from the defendant's perspective. Federal criminal sentencing is probably the most consequential day of their life, and we ask them to lay bare everything about their life history. All of these trauma is going to be on the public record. The degree of vulnerability and openness that we ask them is staggering, as is the trust that we ask them to put in the court to consider and hear and take into account and honestly weigh their arguments. And if at the end of all of that proceeding the defendant has to turn to his lawyer and say why did he go so far above the guideline range, there's been a failing. Something is missing when we have to speculate or guess, and I feel like that's all we've been doing this morning, is saying this is what the judge must have been thinking or could have been thinking. The judge has to tell us, and because that didn't happen here, we ask this court to vacate the sentence and remand for resentencing. Thank you very much. Thank you very much. We appreciate your work. We'll come down and read counsel and then we'll turn to the stage.
judges: Robert B. King, Julius N. Richardson, William L. Osteen Jr.